## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARBARA ANN SNELSON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 2:13-cv-6695** |
| **CAROLYN W. COLVIN,** | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                   **August 18, 2015**

Plaintiff, Barbara Ann Snelson, brought this counseled action pursuant to 42 U.S.C. §

405(g), seeking review of the Commissioner of Social Security Administration's decision

denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security

Act, 42 U.S.C. §§ 401, et seq.  Defendant has filed a response, and the matter is before me for a

Report and Recommendation.[1]  For the reasons set forth below, I respectfully **RECOMMEND**

that Plaintiff's Motion for Summary Judgment be **GRANTED** insofar as Plaintiff requests a

remand; Plaintiff's request for review be **GRANTED**; and the matter **REMANDED** for further

proceedings consistent with this Report and Recommendation.


I.      **PROCEDURAL HISTORY**

Plaintiff was born May 26, 1965, and was forty-four years old on the alleged disability

onset date of November 4, 2009.  (R. 61).  Plaintiff completed high school, and has past relevant

work experience as a distribution specialist with a phone company and as a maintenance and

---

[1] This matter has been assigned to the Honorable Legrome D. Davis, who referred it to me for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Order, ECF No. 17).

janitorial worker with a manufacturing company.  (R. 61-63).

Plaintiff protectively filed an application for DIB on April 19, 2010, alleging she had been disabled due to multiple impairments, including elbow surgeries, nerve damage in her arms, and herniated discs.  (R. 166).  On June 29, 2010, Plaintiff's DIB application was initially denied.  (R. 81-84).  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  (R. 85-86).

A hearing was scheduled for September 7, 2011, but was rescheduled to allow Plaintiff to obtain counsel.  (R. 58-59, 109).  A hearing before the ALJ was held on November 17, 2011.  (R. 53-79).  Plaintiff was unrepresented at the hearing; Plaintiff and an impartial vocational expert ("VE") testified at the hearing.  (*Id.*).  On December 30, 2011, the ALJ issued a decision unfavorable to Plaintiff.  (R. 35-47).  Plaintiff filed a request for review to the Appeals Council, and submitted additional evidence supporting her claim.  (R. 10-31, 206-12).  The Appeals Council denied Plaintiff's request for review.  (R. 6-9).  Plaintiff thereafter commenced this action, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).  (Compl., ECF No. 3).

## II.    FACTUAL HISTORY

This Court has reviewed the medical evidence of record before the ALJ pertaining to Plaintiff's instant request for review.  Below is a brief summary of the history relating to her alleged disability:

On December 9, 2008, Plaintiff was injured while attempting to lift a twenty-five pound box from a hand cart.  (R. 297, 305, 392).  Margaret M. Stroz, M.D., a physician at The Occupational Health Center, diagnosed Plaintiff with a left trapezius strain, and restricted

Plaintiff's work capabilities to alternate sitting and standing as needed, to lift and carry ten pounds maximum, and to avoid overhead work.  (R. 240-41).  Plaintiff returned to "light duty" work and improved with conservative treatment.  (R. 344-51).  In February 2009, Plaintiff began to "experience numbness and tingling in her left ring and small fingers and ongoing muscle spasms in [her] back."  (R. 297).  Nevertheless, by March 2009, Plaintiff had returned to "full duty" work.  (R. 341).

In May 2009, Susan Blydenburgh, M.D., also of The Occupational Health Center, referred Plaintiff to Robert H. Huxster, M.D., of Chester County Orthopaedic Associates for a consultation.  (R. 335).  An electromyography ("EMG") and magnetic resonance imaging ("MRI") were performed, which suggested "significant dysfunction of Plaintiff's ulnar nerve at the elbow and mild to minimal disc bulging at c5-c6 of Plaintiff's spine."  (R. 245, 281).  Therefore, Dr. Huxster referred Plaintiff to Randall W. Culp, M.D., of the Philadelphia Hand Center, for surgical consultation.  (R. 245, 305, 392).

Dr. Culp diagnosed Plaintiff with recurrent left cubital tunnel syndrome on June 16, 2009, and scheduled surgery.  (R. 295).  On November 5, 2009, Dr. Culp performed "revision left ulnar nerve transposition, left flexor pronator lengthening for submuscular transfer" surgery.  (R. 390-91).  At her November 24, 2009 follow-up visit, Plaintiff informed Dr. Culp that the numbness and tingling on her left side had resolved, but she had developed some numbness and tingling on her right side.  (R. 289).  At a January 5, 2010 follow-up evaluation, Plaintiff reported she was happy with the results of the left elbow surgery, and requested to proceed with surgery to resolve her right side cubital tunnel syndrome.  (R. 388).

On January 22, 2010, Dr. Stroz treated Plaintiff for spasms and tenderness in her right trapezius.  (R. 432-33).  Dr. Stroz found that Plaintiff displayed a full range of motion in her

cervical spine and no tenderness with her cervical flexion, extension, and rotation.  (*Id.*).  Dr. Stroz assessed Plaintiff with an acute trapezius strain and prescribed heat, stretches and medication, and referred Plaintiff back to Dr. Culp.  (*Id.*).

On March 12, 2010, Dr. Culp performed right elbow surgery, for Plaintiff's right side cubital tunnel syndrome.[2]  (R. 379-80).  At her March 23, 2010 follow-up evaluation, Plaintiff complained of continued finger numbness; however, her numbness had improved by the date of her next follow-up visit on April 27, 2010.  (R. 383, 470).  At her June 8, 2010 follow-up evaluation, Plaintiff continued to complain of some numbness in her right forearm and small finger, and informed Dr. Culp that she felt a pop in her left elbow.  (R. 468).  Dr. Culp examined Plaintiff and found active motion of the elbow, and no instability.  (*Id.*).

In August 2010, Plaintiff presented to Virginia Keeler, D.O. for mild back pain around the gluteal area that radiated to the right buttock and right knee.  (R. 449-50).  Dr. Keeler observed no injury to Plaintiff's knee, and recommended ice and over the counter medication.  (*Id.*).  In September 2010, Dr. Blydenburgh noted that Plaintiff complained of left shoulder discomfort and back problems.  (R. 425-26).  In a progress note, Dr. Blydenburgh described Plaintiff's case as "complex," opined that Plaintiff could lift no more than ten pounds, and recommended no repetitive use of her upper extremities.  (*Id.*).  Dr. Blydenburgh also discussed Plaintiff's desire to have a functional capacity evaluation ("FCE"), which was postponed due to back pain.[3]  (R. 425-30).  Plaintiff underwent an FCE with a physical therapist on October 7,

---

[2]  The surgery involved right ulnar nerve revision neurolysis, right flexor pronator lengthening for submuscular transfer, excision of the right median antebrachial cutaneous neuroma, and transposition of the right median antebrachial cutaneous neuroma nerve. (R. 379-80).

[3]  In her progress notes, Dr. Blydenburgh explains that a "[physical therapist] . . . conduct[s] a functional capacity evaluation for job placement purposes."  (R. 430).

2010.  (R. 467; *see* R. 430).  Dr. Culp noted that the FCE recommended that Plaintiff return to sedentary work with no repetitive use.[4]  (R. 467).

At a January 3, 2011 evaluation with Dr. Culp, Plaintiff complained of numbness in her ring and small fingers, as well as a mass, in her left hand.  (R. 466).  Dr. Culp recommended repeat EMG testing, which revealed positive cubital tunnel on the right, and negative on the left.  (*Id.*; R. 462).  In February 2011, Plaintiff then determined that she would undergo surgery on her right elbow again to resolve her numbness and tingling.  (R. 462).

In January 2011, Plaintiff presented to Dr. Keeler again with back pain.  (R. 447).  Dr. Keeler noted that the pain was moderate and located in Plaintiff's upper back, and radiated to the left shoulder and left arm.  (*Id.*).  Dr. Keeler conducted a physical examination and noted that Plaintiff's cervical spine had muscle spasm and mild pain with motion; thoracic spine had muscle spasm and moderate pain with motion; left shoulder had tenderness and moderate pain with motion; and right shoulder had tenderness and mild pain with motion.  (R. 448).  Dr. Keeler ordered an MRI, which revealed no fracture, dislocation, acute bony abnormality, or degenerative change of Plaintiff's shoulder, and a "normal weight bearing thoracic spine." (R. 451-55).

At the hearing, Plaintiff testified that she had been scheduled for another surgery for her right elbow with Dr. Culp on November 10, 2011.  (R. 63).  However, it was cancelled because her insurance would not cover the procedure.  (*Id.*).  Plaintiff also testified that she was currently being treated by Bryan Perry, a physician assistant ("P.A.") at AKSU Orthopaedic and Spine Center, and Bruce H. Levin, M.D. for pain in her low back, left shoulder, neck, and lower left

---

[4]  The record does not contain the FCE Dr. Culp referred to in his October 2010 follow-up evaluation, nor any treatment notes from a physical therapist.

side.  (R. 66).  Plaintiff stated she was undergoing epidural injections with Dr. Levin to treat her

pain, including an injection that occurred in November 2011.  (R. 63, 66).  The record contained

only one report from P.A. Perry, a check-the-box form report dated September 14, 2011, that

stated that Plaintiff could return to light duty work with no repetitive overhead activity, no

repetitive lifting, and no lifting greater than ten pounds.  (R. 482).  The record did not contain

treatment notes from Dr. Levin.


**III.    STANDARD OF REVIEW**

Under the Social Security Act, a claimant is disabled if he or she is unable to engage in

"any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected . . . to last for a continuous period of not less than twelve (12)

months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  A five-step sequential evaluation

is used to evaluate a disability claim.[5]  The claimant bears the burden of establishing steps one

through four, while the burden shifts to the Commissioner at the fifth step to establish that the

---

[5]  The steps are as follows:

> First, the Commissioner considers whether the claimant is
> currently engaged in substantial gainful activity.  If he [or she] is
> not, then the Commissioner considers in the second step whether
> the claimant has a "severe impairment" that significantly limits his
> [or her] physical or mental ability to perform basic work activities.
> If the claimant suffers a severe impairment, the third inquiry is
> whether, based on the medical evidence, the impairment meets the
> criteria of the impairment listed in the "listing of impairments," . . .
> , which result in a presumption of disability, or whether the
> claimant retains the capacity for work.  If the impairment does not
> meet the criteria for a listed impairment, then the Commissioner
> assesses in the fourth step whether, despite the severe impairment,
> the claimant has the residual functional capacity to perform his [or
> her] past work.  If the claimant cannot perform his [or her] past
> work, then the final step is to determine whether there is other
> work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520.

claimant is capable of performing other jobs in the national economy, in light of his or her age, education, work experience, and residual functional capacity ("RFC"). *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007) (citing *Ramirez v. Barnhart*, 372 F.2d 546, 551 (3d Cir. 2004)).

Judicial review of a final decision of the Commissioner is limited. The District Court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989); *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984); 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla, and such relevant evidence as a reasonable mind might accept as adequate. *Burnett v. Apfel*, 220 F.3d 112, 118 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).

## IV.     THE ALJ'S DECISION

The ALJ proceeded through the sequential evaluation process and made the following findings:

1.      Plaintiff had not engaged in substantial gainful activity after November 5, 2009, the alleged onset date.

2.      Plaintiff had the following severe impairments: chronic bilateral ulnar neuropathy, status post right revision submuscular nerve transposition, status post excision of

neuroma and transposition of median antebrachial cutaneous nerve, and cervical spine stenosis.

3.  Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.  Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(b) except that she cannot engage in repetitive overhead activity or repetitive lifting.  Plaintiff can frequently lift/carry ten pounds, can stand/walk about six hours in an eight hour work day, can sit about six hours in an eight hours workday, and has no other postural, manipulative, visual, communicative, or environmental limitations.

5.  Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(R. 38-48).  Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

(R. 48).


V.     DISCUSSION

In her request for review, Plaintiff argues that the ALJ failed to: (A) fully develop the record in light of Plaintiff's *pro se* status at the administrative hearing; (B) re-contact Plaintiff's physicians to clarify what they meant by precluding Plaintiff from "repetitive use;" and (3) inquire as to whether there was consistency between the VE's testimony and the occupational information contained in the *Dictionary of Occupational Titles* ("DOT").

In my review of Plaintiff's claims, I considered the various sources of medical evidence, the submissions of counsel, the testimony at the administrative hearing, and the ALJ's decision. For the reasons that follow, I recommend the District Court remand this matter because the ALJ failed in his duty to develop the record in light of Plaintiff's *pro se* status and failed to set forth the reasons he concluded Plaintiff's treating physician's use of term "no repetitive use" meant "no constant use of Plaintiff's hands."

A.      ALJ's Duty to Develop the Record

Plaintiff argues that the ALJ failed to develop the record, as required because of her *pro se* status at the November 17, 2011 administrative hearing.[6]  (Pl.'s Br. 4-6).  At the hearing, Plaintiff testified that she was undergoing epidural injections for pain in her elbows, left shoulder, lower back, neck, and lower left side.  (R. 66).  She further testified that Brian Hurwitz from Career Line, P.A. Perry,[7] and Dr. Levin informed her that she would only be able to return to work on a part-time basis. (R. 77-78).  Plaintiff asserts that the ALJ should have obtained records related to this testimony or should have informed her that she should have submitted updated records.  (Pl.'s Br. 4-6).

"The burden to develop the record is shared between the claimant and the ALJ."  *Holmes v. Barnhart*, No. 04-5765, 2007 WL 951637, at *7 (E.D. Pa. Mar. 26, 2007) (citing *Ventura v.*

[6]  Plaintiff appeared *pro se* at her administrative hearing before the ALJ.  On October 4, 2011, Edward A. Swierczek, a non-attorney representative from Allsup Insurance Company, entered an agreement with Plaintiff to represent her in her Social Security proceedings.  (R. 57, 138).  However, Mr. Swierczek was not present at the November 17 hearing.  (R. 55).  The ALJ questioned Plaintiff about Mr. Swierczek, and she asserted that she "never even heard of him." (R. 56).  Plaintiff admitted that she had agreed to have Allsup Insurance Company represent her; however, she stated they never contacted her.  (R. 57-58).  Plaintiff explained that she had met with attorney Nicholas Feden on September 9, 2011, and believed that he would represent her in the proceedings.  (R. 55).  However, Mr. Feden was not present at the hearing, and the record does not contain any representative agreements with Mr. Feden.  Despite this confusion, the ALJ continued with the hearing on November 17, 2011, with Plaintiff proceeding *pro se*. (R. 59).

[7]  In her testimony before the ALJ and her brief to this Court, Plaintiff refers to "Dr. Perry."  (Pl.'s Br. 5-6; R. 63, 78).  The record shows that Brian Perry is a physician assistant.  (R. 482).

A physician assistant is not an "acceptable medical source," which is needed to establish a medically determinable impairment.  *See* 20 C.F.R. §§ 404.1512, 404.1513(d); SSR 06–03p, 2006 WL 2329939, at *6.  However, sources such as a physician assistant may be used to assess the severity of an impairment and how it affects a claimant's ability to function.  20 C.F.R. § 404.1513(d).  Opinions from medical sources who are not "acceptable medical sources" "are important and should be evaluated on key issues such as impairment severity and functional effects."  SSR 06-03p, 2006 WL 2329939, at *3.

9

*Shalala*, 55 F.3d 900, 902 (3d Cir. 1995)).  The claimant bears the burden to develop the record regarding her disability because she is in a better position to provide information about her own medical condition.  *Wert v. Comm'r of Soc. Sec.*, No. 13-5705, 2015 WL 1808594, at *12 (E.D. Pa. Apr. 21, 2015) (quoting *Money v. Barnhart*, 91 F. App'x 210, 215 (not precedential)); *see also* 20 C.F.R. § 404.1512(a).  The ALJ bears the burden to "identify relevant listed impairments, investigate facts, and develop arguments both for and against benefits [because] Social Security proceedings are inquisitorial rather than adversarial."   *Neal v. Comm'r of Soc. Sec.*, 57 F. App'x 976, 979 (3d Cir. 2003) (not precedential) (citing *Burnett,* 220 F.3d at 120; *Sims v. Apfel,* 530 U.S. 103, 110-11, (2000)).  To fulfill this duty, the ALJ is required to ensure the claimant's complete medical history, for at least the twelve months preceding the month the claimant filed her application, is developed on the record.  *See Money*, 91 F. App'x at 215-16 (citing 20 C.F.R. §§ 404.1512(d), 416.912(d)).  However, if a claimant is *pro se* at the administrative hearing, the ALJ must assume a more active role, and must develop the record with special care.  *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003); *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979); *see also Smith v. Harris*, 644 F.2d 985, 989 (3d Cir. 1981) ("Particularly where the claimant is unrepresented by counsel, the ALJ has a duty to exercise a heightened level of care.").

"When a claimant appears at a hearing without counsel, the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore all of the relevant facts.'"  *Reefer*, 326 F.3d at 380 (quoting *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)).  This "heightened duty includes 'advising the *pro se* plaintiff on the importance of evidence from his or her treating physician,'" and probing testimony that may be integral to the claimant's case.  *Howe v. Astrue*, No. 12-93, 2013 WL 593975, at *2 (W.D. Pa. Feb. 14, 2013) (quoting *Orner v. Astrue*, No. 10-

3083, 2011 U.S. Dist. LEXIS 14540, at *25 (E.D. Pa. Aug. 25, 2011)); *see Gauthney v. Shalala*, 890 F. Supp. 401, 410 (E.D. Pa. 1995) (finding that an ALJ that failed to probe a claimant's vague testimony regarding a hand impairment did not meet the heightened duty to *pro se* claimants).

While there is no particular prescribed procedure that an ALJ must follow, an ALJ's development of the record must be "not wholly inadequate under the circumstances." *Reefer*, 326 F.3d at 380 (quoting *Miranda v. Sec'y of Health, Educ. & Welfare,* 514 F.2d 996, 998 (1st Cir. 1975)); *see also Armstrong v. Colvin*, No. 13-CV-00430, 2014 WL 5442745, at *14 (M.D. Pa. Oct. 24, 2014) ("The adequacy of an ALJ's investigation will be determined on a case-by-case basis.") (quoting *Rosenberger v. Comm'r of Soc. Sec.*, No. 08-CV-271, 2009 WL 3124754, at *3 (W.D. Pa. 2009)).  "The essential inquiry is whether the incomplete record reveals evidentiary gaps [that] result in prejudice to the claimant." *Id.*; *see also Comiskey v. Astrue*, No. 09-0252, 2010 WL 308979, at *6 (E.D. Pa. Jan. 27, 2010) ("remand is appropriate when the ALJ has failed . . . to fill significant evidentiary gaps that are material to the disability determination.") (citation omitted).

At the hearing, Plaintiff testified about her back and shoulder pain.  She informed the ALJ that she was currently being treated by P.A. Perry, who had referred her to Dr. Levin for epidural injections due to ongoing problems with her neck, back, left shoulder, right leg, hands, and right elbow.  (R. 63-64, 66).  Plaintiff testified that Dr. Levin stated she had ongoing problems with herniated discs, a rotator cuff tear, and muscle spasms that go down the left side of her back.  (R. 64).  She explained that her lower back ached after only ten to fifteen minutes of walking, her left shoulder was consistently sore, her neck felt like someone was pulling it, and her back had constant muscle spasms.  (R. 66).  Therefore, she had received an epidural injection

to alleviate her upper body pain from Dr. Levin the Thursday before the hearing.  (R. 63, 66).[8]
According to Plaintiff, Dr. Levin further informed her that she should next have an epidural
injection on her lower left side, as well.  (R. 66).

Plaintiff also testified about her ongoing elbow impairments.  She explained that her
cubital tunnel syndrome allows her to put dishes away for only about five to ten seconds because
her hand becomes numb.  (*See* R. 66).  Plaintiff stated that she was scheduled to undergo surgery
for her right elbow with Dr. Culp on November 10, 2011.  (R. 63).  But, due to changes in her
insurance, she could not afford to proceed with the surgery.  (*Id.*).  Therefore, Plaintiff explained
that she was now being treated by P.A. Perry and Dr. Levin.  (R. 63-64, 66).  Plaintiff testified
that Dr. Levin informed her that she had an ongoing problem with cubital tunnel syndrome.  (R.
64).

In light of this testimony, the ALJ was on notice that Plaintiff was receiving ongoing
treatment for her back, shoulder, and elbow impairments, specifically from Dr. Levin and P.A.
Perry.  The ALJ did not develop the record regarding this evidence.  The most recent treatment
note for Plaintiff's back and shoulder impairments was from January 28, 2011, when Plaintiff
presented to Dr. Keeler with moderate back pain extending to her left shoulder.  (R. 447-48).  Dr.
Keeler ordered an MRI, which returned normal results in February 2011.  (R. 451-55).  Likewise,
the most recent treatment note for Plaintiff's elbows is from February 2011.  (R. 462).

The ALJ proceeded on a record that contained no information from Dr. Levin and only

---

[8]  Plaintiff's testimony regarding her epidural injections is vague.  While she explained
her ailments, she does not specifically state where she had the injection, or which ailment was
alleviated after the injection.  Review of the transcript suggests that her November 2011 epidural
injection relieved pain in her upper body, including her neck and shoulders.  (R. 63-66).  The
ALJ did not probe Plaintiff for clarification, nor did he question Plaintiff about the details of her
examinations or treatment relationship with Dr. Levin or P.A. Perry.

one document from P.A. Perry, a form report dated September 14, 2011.  The form report was simply a check-the-box form, with no narrative.  (*Id.*).  The record did not contain any supporting treatment notes from P.A. Perry, even though Plaintiff testified that she was under his care. Plaintiff's testimony further revealed that Dr. Levin recently treated Plaintiff's back and shoulders with an epidural injection and evaluated her cubital tunnel syndrome.  Additionally, Dr. Culp had been scheduled to perform right elbow surgery immediately prior to the hearing. (R. 63-64).  The ALJ did not probe Plaintiff further about this recent treatment, alert Plaintiff that she could supplement the record with updated records, or attempt to obtain updated records from Dr. Levin or P.A. Perry himself.  *See Reefer*, 326 F.3d at 380; *Wooten v. Astrue*, No. 11-7592, 2012 WL 6601397, at *4 (E.D. Pa. Dec. 17, 2012) ("When there is a perceived gap in the historical record, the ALJ has an obligation to obtain the missing information."); *Rosa v. Colvin*, 956 F. Supp. 2d 617, 625 n.13 (E.D. Pa. 2013) ("[An ALJ's] affirmative duty . . . is further enhanced when the record sought is that of a treating physician.") (quoting *Suriel v. Comm'r of Soc. Sec.*, No. 05-1218, 2006 WL 2516429, at *4 (E.D.N.Y. Aug. 29, 2006)).  This failure resulted in an evidentiary gap in the record that prejudiced Plaintiff, necessitating remand.

The Court finds particularly instructive *Howe v. Astrue*, a case in which a *pro se* claimant testified that she was under the care of her treating physicians at the time of the hearing and had recently received an injection from a pain management doctor.  2013 WL 593975, at *3. The most recent medical reports in the record were from more than six months before the hearing, and the pain management doctor's records were neither sought nor produced.  *Id.*  The Court determined that this constituted an evidentiary gap, which, along with the ALJ's failure to properly question claimant about his physical abilities, warranted remand.  *Id.*

I conclude that Plaintiff was prejudiced by the evidentiary gaps in the record.  In his RFC assessment, the ALJ discounted Plaintiff's testimony regarding the severity and limiting effects of her impairments because it was not supported by the treatment records.  (R. 44-45).  The ALJ specifically noted that Plaintiff was "not currently on any prescribed pain medication for her back pain," her February 2011 left shoulder MRI demonstrated a "normal exam," and she "was last assessed for her elbow impairments on February 8, 2011 and did not supply any other medical records showing treatment for her elbows."  (*Id.*).  If the ALJ had developed the record with respect to Plaintiff's testimony, it is not apparent that he would have reached this conclusion.  Specifically, updated records may have substantiated Plaintiff's report that she had received an epidural injection for her back and shoulder pain, that her elbow impairments had been assessed more recently than February 2011, and that she was receiving treatment at the time of the hearing. [9]  Thus, Plaintiff was prejudiced by the ALJ's failure to obtain updated records from Plaintiff's treating sources himself, or to inform Plaintiff she could supplement the

---

[9] Plaintiff further argues that the ALJ should have obtained records from Brian Hurwitz from Career Line.  According to her testimony, he stated that she should start out with only part-time work due to her pain.  (Pl.'s Br. 5-6).  Plaintiff similarly testified that P.A. Perry and Dr. Levin made similar suggestions.  (R. 77-78).

The significance of Mr. Hurwitz's finding that Plaintiff can perform only part-time work is not apparent.  *See Forster v. Colvin*, No. 13-cv-02699, 2015 WL 1608741, at *7 (M.D. Pa. Apr. 10, 2015) ("[A] claimant's ability to work on a part-time basis may constitute probative evidence of his or her ability to perform the duties of a full-time job.") (citations omitted).  In light of the recommendation that this case be remanded on other grounds, the Court need not resolve whether Plaintiff was prejudiced by the failure to obtain evidence from Mr. Hurwitz.  On remand, the ALJ should consider whether such evidence is relevant and material to the disability determination.  *See* SSR 06-3p, 2006 WL 2329939, at *2 (evidence from "other sources," may be used to show the severity of a claimant's impairment(s) and how it affects the claimant's ability to function).

record.[10]  *See Reefer*, 326 F.3d at 380 (remand warranted where ALJ failed to obtain medical records and probe into Plaintiff's limitations relevant to the disability determination).

Accordingly, I recommend that the matter be remanded, with a directive to the ALJ to further develop the record from Plaintiff's treating sources relating to her back, shoulder, and elbow impairments.

### B.    Duty to Re-Contact Physicians

Next, Plaintiff argues that the ALJ erred by failing to re-contact two of her treating providers, Drs. Culp and Blydenburgh, to clarify what they meant when they opined that Plaintiff could not engage in "repetitive use" in their treatment notes.  (Pl.'s Br. 6-7).  Specifically, Dr. Culp opined that Plaintiff could perform light work with a ten pound weight restriction and "no repetitive use;" Dr. Blydenburgh opined that Plaintiff could lift no more than ten pounds, and recommended no repetitive use of her upper extremities.  (R. 425-26, 484).

The Social Security Regulations that were applicable at the time Plaintiff's claim was adjudicated directed that an ALJ ***must*** re-contact a medical source "for purposes of clarification" when "'the report from [the] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or [the report] does not

---

[10] The Commissioner argues that Plaintiff has not demonstrated prejudice because the Appeals Council considered the evidence of epidural injections, and concluded that it did not provide a reasonable basis for overturning the ALJ's decision.  (*See* Def.'s Br. 10-11 n.3).  Other courts in this Circuit have previously rejected this argument, and I find it similarly unavailing. *See George v. Comm'r of Soc. Sec.*, No. 13-5179, 2014 WL 3955071, at *4-5 (D.N.J. Aug. 13, 2014) ("Defendant's assertion, that because the Appeals Council considered the report there was no prejudice to the Plaintiff, is unsubstantiated by relevant law.").  Moreover, there is no requirement that the claimant produce the records that the ALJ should have obtained in order to show prejudice.  *Comiskey*, 2010 WL 308979, at *7.  Rather, the evidence that is relevant to the Court's review is the evidence that was presented before the ALJ.  *See George*, 2014 WL 3955071, at *5.

appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'"

*Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (quoting 20 C.F.R. §

416.912(e)(1)).[11]  In *Johnson*, the Third Circuit explained that under this regulation, the ALJ is

required to re-contact a treating source only when the evidence received from that source "is

inadequate for [an ALJ] to determine whether [the claimant is] disabled."  *Id.* (quoting 20 C.F.R.

§ 416.912(e)(1)).  The Third Circuit characterized this requirement as "an important

prerequisite."  *Id.*

In this case, the ALJ gave great weight to the opinions of both Drs. Culp and

Blydenburgh.  The ALJ noted that Dr. Culp had treated Plaintiff since at least her alleged onset

date, and had performed surgeries on both her elbows to alleviate cubital tunnel syndrome.  (R.

45).  The ALJ also found that Dr. Culp's September 2011 opinion that Plaintiff could perform

light work, lifting no more than ten pounds and no repetitive use, to be consistent with the

record.  (*Id.*).  The ALJ also noted that Dr. Blydenburgh had treated Plaintiff since 2009.  (*Id.*).

He found her opinions of Plaintiff's work restrictions to be consistent with the record.  (R. 46).

The ALJ noted that in November 2009, Dr. Blydenburgh opined that Plaintiff could not use her

left arm for a limited period, following elbow surgery; and in her most recent assessment of

Plaintiff's abilities, in September 2010, she limited Plaintiff to lifting no more than ten pounds

and no repetitive use of her upper extremities.  (R. 45-46).

---

[11]  The regulations governing an ALJ's duty to re-contact a medical source were amended, effective March 26, 2012.  "Under the current regulations, when faced with insufficient evidence to determine disability, an ALJ '*may* recontact [a] treating physician, psychologist, or other medical source' [or] *may* instead seek further evidence from another source, including the claimant himself."  *Toland v. Colvin*, No. 12-1663, 2013 WL 6175817, *7 n.3 (W.D. Pa. Nov. 25, 2013) (citing 20 C.F.R. § 404.1520b) (emphasis added).  The version of the regulation in effect at the time of the ALJ's decision applies.  *See Welsh v. Colvin*, No. 13-736, 2014 WL 2214221, at *4 n.2 (W.D. Pa. May 28, 2014).

The crux of Plaintiff's argument is that the ALJ could not credit Drs. Culp and Blydenburgh because their own internal treatment notes failed to define the meaning of "repetitive use." (Pl.'s Br. 7). However, in making this argument, Plaintiff did not acknowledge that the duty to re-contact a medical source is triggered only when the evidence received from that source "is inadequate for [the ALJ] to determine whether [a claimant is] disabled." *Johnson*, 529 F.3d at 205.

The evidence submitted by Drs. Culp and Blydenburgh is more than sufficient to make a disability determination. Both physicians treated Plaintiff prior to her alleged onset date. (R. 301, 478-79, 484). The record contains operative reports, follow-up evaluation notes, and letters from Dr. Culp, as well as progress notes, duty status and follow-up notes, follow-up visit medical reports, and disability claim statements from Dr. Blydenburgh. (R. 293-94, 299-310, 315, 328-35, 383-94, 423-31, 435-36, 441-42, 462-80, 484). These records contain detailed notes on Plaintiff's subjective complaints and objective medical findings of physical examinations and testing, as well as the physicians' assessments of Plaintiff's capabilities. (*Id.*) Accordingly, the ALJ was not required to re-contact these physicians. *See Toland*, 2013 WL 6175817, *8 ("The critical question [in determining whether the ALJ was required to re-contact a treating source is] whether there is enough evidence in the record to permit an ALJ to reach an informed decision.").

However, Plaintiff also argues that the ALJ's overall RFC determination is not supported by substantial evidence because the ALJ presumed Dr. Culp's limiting Plaintiff to "no repetitive use" meant "no constant use of [Plaintiff's] hands." (Pl.'s Br. 7 (citing R. 75); *see also* R. 45). On this point, the Court is persuaded.

In his RFC analysis, the ALJ discussed assessments made by Drs. Culp and Blydenburgh, limiting Plaintiff to "no repetitive use" and "no repetitive use of her upper extremities," respectively.  (R. 45-46, 425, 427).  The ALJ interpreted Dr. Culp's restriction of  "no repetitive use" to mean "no constant use of [Plaintiff's] hands."  (R. 45).  It is not apparent how the ALJ reached this conclusion, as neither Dr. Culp nor Dr. Blydenburgh made such a finding in their notes or treatment records.[12]

Plaintiff argues that this distinction is important because the ALJ found that Plaintiff could perform the jobs of check cashier and appointment clerk.  (R. 46-47).  The job of check cashier requires frequent reaching, handling, and fingering, DICOT 211.462-026, 1991 WL 671844 (1991), and the job of appointment clerk requires frequent reaching and handling, DICOT 237.367-010, 1991 WL 672185 (1991).  Thus, if "no repetitive use" indeed means "no frequent use," Plaintiff may be precluded from engaging in jobs that the ALJ found Plaintiff could perform.

There is some support for Plaintiff's argument that "repetitive" may be equivalent to "frequent."  *See e.g., Boone v. Barnhart*, 353 F.3d 203 (3d Cir. 2004); *Williams v. Barnhart*, 424 F. Supp. 2d 796, 802 (E.D. Pa. 2006).  In *Boone*, the ALJ determined that the claimant had the RFC to perform a range of light level work, but could not perform repetitive hand activity.  353 F.3d at 205.  Based on the VE's testimony, the ALJ concluded that the claimant had the capacity to work as, *inter alia*, a sales counter clerk.  *Id.*  However, the Third Circuit found the claimant could not perform the job of a sales counter clerk because the job "involve[d] frequent reaching,

---

[12]  Without reweighing the evidence before the ALJ related to this point, the Court notes in an October 26, 2010 treatment note, Dr. Culp recommended Plaintiff return to "sedentary work with no repetitive use," (R. 467); and on September 26, 2011, he stated that Plaintiff can perform light duty work with a ten pound weight restriction and "no repetitive use."  (R. 484).  In her June 15 and June 29, 2009 treatment notes Dr. Blydenburgh instructed Plaintiff to "avoid freq[uent] repetitive motion[,] esp[ecially] l[eft] arm."  (R. 303, 314).

handling, and fingering, which [the claimant's] limitation on repetitive hand activities would preclude." *Id.* at 207.

Similarly, in *Williams*, the ALJ determined the claimant had the RFC to perform light work, but should avoid constant and repetitive grasping and fine manipulation. 424 F. Supp. 2d at 798. In analyzing the jobs that the ALJ determined that the claimant could perform based on her RFC, the Court noted that the terms frequent and repetitive may be interchangeable. *Id.* at 802.

Because the ALJ failed to offer any explanation as to how he reached his conclusion that Dr. Culp's use of "no repetitive use" meant "no constant use of [Plaintiff's] hands," the Court cannot determine whether substantial evidence supports this conclusion.[13]  *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (an ALJ must provide an explanation of reasoning to enable meaningful judicial review). To the extent the ALJ is unable to ascertain the meaning of this term as imposed by Dr. Culp, he may, in his discretion, clarify by seeking additional evidence. *See* 20 C.F.R. § 404.1520b(c)(1)(2015).

## C.     VE's Testimony and DOT

Lastly, Plaintiff asserts that the ALJ failed to inquire about inconsistencies between the VE's testimony and the occupational information contained in the DOT. (Pl.'s Br. 8-9). Plaintiff argues this was error because there was a "potential inconsistency" in the jobs identified by the VE, which require "frequent reaching," and the RFC determined by the ALJ, which restricted Plaintiff from "repetitive overhead activity." (*Id.*).

---

[13]  Without reweighing the evidence before the ALJ related to this point, the Court notes in an October 26, 2010 treatment note, Dr. Culp recommended Plaintiff return to "sedentary work with no repetitive use," (R. 467); and on September 26, 2011, he stated that Plaintiff can perform light duty work with a ten pound weight restriction and "no repetitive use." (R. 484). In her June 15 and June 29, 2009 treatment notes Dr. Blydenburgh instructed Plaintiff to "avoid freq[uent] repetitive motion[,] esp[ecially] l[eft] arm." (R. 303, 314).

At step five of the sequential analysis, the burden is on the Commissioner to consider "'vocational factors'" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy." *Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c)).  At this step, the ALJ often seeks advisory testimony from a VE.  *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002). When questioning a VE, the ALJ has an obligation to "[i]dentify and obtain a reasonable explanation for any conflicts between occupation evidence provided by VEs . . . and information in the [DOT]." *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (citing SSR 00-4p, 2000 WL 1898704, at *1; *Rutherford*, 399 F.3d at 556).  This requires the ALJ to "(1) ask, on the record, whether the VE's testimony is consistent with DOT, (2) elicit a reasonable explanation where an inconsistency does appear, and (3) explain in [his] decision how the conflict was resolved." *Id.* (quoting *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002)) (internal quotations omitted).

Because development of the record from Plaintiff's treating sources and further consideration of the "repetitive use" limitation may impact the ALJ's RFC determination and the limitations included in any VE hypothetical, the Court need not address this argument. *See Williams*, 424 F. Supp. at 804 (VE's testimony not supported by substantial evidence based on ambiguity of term "repetitive").

## VI.    CONCLUSION

After careful review of the record, I respectfully recommend that the District Court remand this matter for further proceedings consistent with this Report and Recommendation.

Therefore, I make the following:

**RECOMMENDATION**

AND NOW, this ___18th___ day of August, 2015, it is RESPECTFULLY

RECOMMENDED that Plaintiff's Motion for Summary Judgment be GRANTED insofar as

Plaintiff requests a remand; and Plaintiff's request for review be GRANTED to the extent that

this matter be remanded for further proceedings consistent with this Report and

Recommendation.

BY THE COURT:


___/s/ Lynne A. Sitarski_____
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE